The Kansas & Texas Coal Co. v. Millett.

THE KANSAS & TEXAS COAL COMPANY, Respondent, v. E. B. MILLETT *et al.*, Appellants.

Kansas City Court of Appeals, May 30, 1892.

1. **Principal and Agent:** COLLECTING RENTS: MORTGAGOR AND MORT-
   GAGEE. Where a mortgagor appoints an agent with the consent of a junior mortgagee, to collect rents and pay the overplus thereof after expenses in the extinguishment of a prior mortgage, the law will not presume such an agent to be also the agent of the junior mortgagee or the joint agent of both, so as to bind the junior mortgagee by his contracts for the lighting and heating of the mortgaged property; nor will the assent of such mortgagee to an arrangement between the mortgagor and his vendee of a part of the mortgaged premises, that for a consideration, lighting and heating of the sold portion shall be done from the unsold portion, make such mortgagee liable for the agent's contracts.

2. **Instructions:** CONTINUING CONTRACT BY EXECUTOR: MISLEADING. An instruction which without evidence submits the existence of an arrangement between the parties and the continuance of such arrangement by the executors of one of the parties after his death is misleading and should not be given.

3. **Practice, Trial:** JUDGE'S FAIRNESS. A careful scrutiny of the record in this case fails to justify any complaint of the fairness of the trial judge.

*Appeal from the Jackson Circuit Court.*—HON. R. H. FIELD, Judge.

REVERSED AND REMANDED.

*W. J. Ward*, for appellants.

It was necessary to show in this case, to make the Holmes estate liable for any part of the coal sued for, that Webster was in charge of the north half of the Landis Court, as the agent of the executors of the Holmes estate. Now, what evidence did they offer to show it? But judgments cannot be obtained or sustained on suspicion; they must have some evidence to support them; they cannot be sustained on mere "conjecture or speculation." *Peck v. Railroad*, 31 Mo. App. 123; *State ex rel. v. Thayer*, 5 Mo. App. 423, 424; *O'Donnell v. Railroad*, 7 Mo. App. 193; *Knapp, Stout & Co. v. Joy*, 9 Mo. App. 50, 51.

*Crysler, Sherlock & Stearns*, for respondent.

Is the court of appeals prepared to say in this case that there was not a scintilla of evidence upon which to submit the case to the jury? We think there is affirmative evidence upon every proposition the plaintiff was bound to prove to entitle it to a recovery, and that the trial court committed no error in submitting the case to the jury. Upon this point see *Layson v. Wilson*, 37 Mo. App. 640; *Walton v. Railroad*, 32 Mo. 634; *Lumber Co. v. Warner*, 93 Mo. 374; *Huckshold v. Railroad*, 90 Mo. 548; *Jackson v. German*, 27 Mo. App. 62; *Mitchum v. Dunlap*, 98 Mo. 418; *Gibson v. Zeibig*, 24 Mo. App. 65.

SMITH, P. J.—This was a suit upon an open account for coal furnished by the respondent at what is known as Landis Court, situated on South Broadway, Kansas City, Missouri. There was a trial where evidence was introduced tending to prove that J. K. Landis was the original owner of the Landis Court, consisting of two blocks of buildings, known as north

and south blocks; that Landis, to erect these blocks, had borrowed a large amount of money, the exact amount was not shown, on each half, from the Lombard Investment Company, and that to secure this loan the company had a first deed of trust on each half of the property. William Holmes had been compelled to pay for Landis, by way of security debts, the sum of $105,000, and for the purpose of securing the debts Landis executed a second deed of trust in favor of Holmes on the property, March 6, 1888, which deed also covered other property. The deed was also security for any further sum that Holmes, Webster & Behney might borrow to complete the building of Landis Court, to the amount of $50,000. Holmes, Webster & Behney, under this provision of the deed of trust, borrowed for the purpose of completing the building the sum of $40,000. The building was completed, and Landis took possession and put his nephew in charge.

It seems that Mr. Holmes complained to Landis that the rents were not being applied to pay the Lombard interest, and that, if it was not done, the company would sell the property out; that Mr. Landis then agreed that he would put E. H. Webster in charge of it to collect the rents, and after paying the running expenses that he should turn over the balance to the Lombards to keep them from selling it. A short time after Webster took charge, Landis traded or exchanged the south half of the property to E. B. Millett for some land in Kansas; this was done in the spring or early summer of 1888, and Mr. Holmes released the south half of the court from his deed of trust, and Landis conveyed the Kansas land to him, which was credited on his indebtedness to Holmes. One of the conditions of the sale to Millett of the south half made by Landis was that Webster should furnish light and heat to the south half, as all the heating and

lighting machinery for the entire court was in the north half, for which Millett was to pay his part of the cost. The arrangements were all made in the presence of Mr. Holmes, and with his consent, to get him to release the south half from his deed of trust.

In August, 1888, Mr. Holmes died. Webster continued in possession of the property for Landis and kept it up and also acted as Millett's agent for the south half of it until the spring of 1889. After Webster took charge, the property did not bring enough in rents to pay the expenses and the interest due the Lombards, and Mr. Ward, one of the executors of the Holmes estate, being informed by the Lombards that they would sell the property if the interest was not paid, paid to them over $1,000 interest to prevent the sale and protect the interest of the Holmes estate in the property. Landis still continued in charge of the north half through his agent, Webster, it being the half on which the Holmes estate still had a second deed of trust.

Mr. Landis had authorized Mr. Ward to sell any of the property upon which he had given the Holmes deed of trust and apply its proceeds on his indebtedness to the Holmes estate. Along in the fall of 1889, Mr. Ward made a sale or contract of sale of one of the pieces of property covered by the Landis–Holmes deed of trust other than Landis Court, and there being all kinds of claims against Landis, to secure the party the title, he had the entire property covered by the deed of trust sold under it by the sheriff, as he (Ward), being both executor and trustee, could not make the sale. At this sale, Ward as executor bought all the property, including the north half of Landis Court, except the piece he had agreed to sell to the third party, which was bought by him, and the money he paid was credited on

Landis' indebtedness to the Holmes estate. The date of the sale was December 4, 1889. Mr. Ward testified that no effort was made by the executors of the Holmes estate to get possession of any part of the court.

It further appears that a short time after this the Lombards again threatened to sell the property, or the part bought by the Holmes estate, and in January, 1890, Mr. Ward in behalf of the estate informed the company that they could sell it if they wished to, as the Holmes estate would pay no more interest, and about February 1, 1890, they advertised the property for sale. The executors then made a sale of their equity in the north half to E. B. Millett, and he paid the interest due the Lombards and prevented the sale. The sale to Millett was to date, as being made March 1, 1890, but owing to the title not being satisfactory as shown by the abstract when first delivered, it was not completed until the latter part of the month. When the sale was completed, Mr. Webster turned the property over to Mr. Millett.

It further appeared that the plaintiff made a contract with the defendant Falvey, who was an engineer in charge of the heating and lighting of Landis Court as an employe of Webster, to furnish coal to the court, and that it did so, and that its bills were presented to and paid by Webster except the bill for $354.84 which was for coal delivered during the months of February and March, 1890, which was used to heat and light the court. This is substantially all the evidence in the case. The plaintiff had judgment, and defendants have appealed.

The principal error complained of is the action of the trial court in giving on its own motion an instruction which told the jury that if it believed from the evidence that Webster took control and charge of the Landis Court and the running and operation of the same for the benefit of Judge Holmes, and for the

promotion and the protection of Judge Holmes' interests therein, and as an incident and in the exercise of such control to furnish heat and light for the said Landis Court, and this was done by virtue of an arrangement between them and Landis, and, after the death of Mr. Holmes, his executors treated such arrangement as continuing through and including the sales of coal charged for in the bill sued on, and that the coal sued for was sold and delivered at Landis Court upon authorized orders from Webster, then the verdict should be for plaintiff.

It is not believed the evidence justifies the giving of this instruction. It is quite true that, in so far as the rents were applied to the extinguishment of the first mortgage, the security of the second mortgage was thereby enhanced. And while this was for the benefit of Holmes and for the promotion and protection of his interest, yet upon what principle can it be claimed that the agent selected by Landis with the consent of Holmes to carry out this beneficial arrangement was also the agent of the latter? In order to enable Webster as the agent of Landis to carry out the arrangement entered into between Landis, his principal, and Holmes, it was not necessary that he should be the agent of both. An agency is oftentimes implied, but it is not to be implied without reason or presumed without cause. There is nothing in the facts embraced in the hypotheses of this instruction from which the law would imply or presume such an agency as is claimed; such an implication or presumption must be based on facts. The mere fact that Webster took charge of the court, and ran it for the purposes which the evidence discloses he did, cannot justify the conclusion of law that he was the agent of Holmes.

It certainly will not do to say in a case like this where a mortgagor appoints an agent with the consent

of a junior mortgagee to manage and collect the rents on a building situate on the mortgaged premises, and after the payment of the current expenses incurred for labor, and heating and lighting it, to pay the overplus in extinguishment of a prior mortgage debt, that from these facts alone the law will presume such an agent to be also the agent of the junior mortgagee, or the joint agent of both, so that when such agent makes purchases of fuel for the use of the building which he is managing that he can bind the junior mortgagee by such transactions. Nor will the additional fact that the junior mortgagee assented to an arrangement entered into by the mortgagor with one to whom he had sold a part of the mortgaged buildings, whereby the part sold was to be furnished for a consideration to be paid with heat and light from the unsold part of the buildings under the agent, in charge of the latter, who, with the approbation of the junior mortgagee, was authorized by the mortgagor to carry out such an arrangement, also the agent of the junior mortgagee. The evidence conduces to prove no fact or circumstance from which authority can be inferred in Webster to bind Holmes on the contract with plaintiff. We can discover no evidence of any arrangement between Landis, Holmes and Webster by which the latter was authorized to bind Holmes on a contract like the one in issue. If there was no such authority conferred "by virtue of an arrangement" between Holmes, Webster and Landis, then of course there was nothing the executors could continue which would include the coal bill sued on. If the authority never existed it is absurd to say it could be continued by the executors. The jury might have well concluded, as no doubt they did, that because the evidence showed that Holmes was to be incidentally benefited by the application of the rent to the first mortgage that the agent appointed by Landis to accom-

plish this was also the agent of Holmes. Such we think is not the law. The instruction was misleading and should not have been given.

Our attention has been called to no other error which we deem serious or prejudicial. The defendants' counsel in the brief complain that the circuit judge who tried the case manifested some unfairness and prejudice to defendants during the trial. We have carefully scrutinized the record of his action during the trial from the beginning to the ending, and it is but right that we should say that we have found nothing therein to justify the complaint made.

It results that the judgment will be reversed and cause remanded. All concur.